**In re Christian E. INYAMAH, Debtor.**

**No. 06–55663.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Nov. 20, 2007.

E. Darren McNeal, Columbus, OH, for Debtor.

## MEMORANDUM OPINION AND JUDGMENT ORDER REGARDING (# 55)

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Judgment Order constitutes the Court's findings of fact and conclusions of law regarding the Motion for Authority to Disburse Funds filed on behalf of the Chapter 13 Trustee ("Trustee") and the Response filed on behalf of JP Morgan Chase Bank, NA ("Creditor"). The issue is whether funds paid by Christian E. Inyamah ("Debtor") into this failed chapter 13 proceeding should be returned to the Debtor or paid to the Creditor premised upon its judgment and garnishment. Based upon a review of the pleadings, applicable provisions of the United States Bankruptcy Code ("Code"), stipulations of the parties, case law and the statements of Counsel, the Court has determined that the funds must be returned to the Debtor. A brief history illustrates the bases for this decision.

According to the stipulations, the Creditor obtained a judgment against the Debtor on October 5, 2006, in the case of *JP Morgan Chase Bank, NA v. Comp Meka, Inc., et al.* (05–CVH–12–14537). The record indicates that the judgment is in the approximate amount of $39,684.74. The instant chapter 13 proceeding was filed on October 6, 2006. It does not appear, however, that the Creditor was scheduled. Without confirmation, this case was dismissed on March 15, 2007, based upon the fact that the amount of the Debtor's obligations rendered him ineligible for chapter 13 relief, pursuant to section 109(c) of the Code.

On May 22, 2007, the Trustee filed a Certification of Final Payment ("Final Report") and disclosed that he was holding the sum of $6,130.00 that was paid into the plan by the Debtor. According to the Final Report, allowed claims totaled $111,119.29. After deducting the amount of $60.00 paid to Fifth Third Bank as an adequate protection payment and the sum of $75.00 for the Trustee's statutory compensation, it was proposed that the balance of $5,995.00 would be refunded to the Debtor upon approval of the Final Report.

Ten days later, on June 1, 2007, the Creditor filed a non-wage garnishment with the Franklin County Court of Common Pleas, and on June 6, 2007, the Trustee was served with an Order and Notice of Garnishment. According to the stipulations, the Creditor did not learn of the bankruptcy until after June 1, 2007. This prompted the Creditor to obtain from the Common Pleas Court on June 8, 2007, an order ratifying its prior judgment entry. An amended non-wage garnishment was filed by the Creditor on June 11, 2007, and an Order was obtained that same day.

According to the stipulations, on June 14, 2007, the Trustee filed an Answer to the Garnishment indicating that he was holding the sum of $5,995.00 in trust. On that same day, the Trustee filed a Motion to Reinstate Case for Administrative Purposes to obtain instructions from this Court regarding the proper disposition of the funds. Effective August 16, 2007, this case was reinstated.

■ Upon dismissal of an unconfirmed chapter 13 proceeding, undistributed funds paid in by debtors revest, and the automatic stay does not forbid creditor collections actions against debtors. 11 U.S.C. §§ 349(b)(3) and 362(c)(2)(B). These provisions, however, are subject to the restrictions detailed in section 1326(a)(2) of the Code that specifically govern chapter 13 plan payments and their disposition upon dismissal. It provides as follows:

A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirma-

tion. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) (adequate protection payments) to the debtor, after deducting any unpaid claim allowed under section 503(b) (administrative expenses).** (Emphasis Supplied).

While there are some decisions that suggest that section 1326(a)(2) is somehow qualified or limited by the fact that upon dismissal funds revest in debtors and are not subject to the stay provisions, they are not persuasive. *Massachusetts v. Pappalardo (In re Steenstra)*, 307 B.R. 732, 738–741 (1st Cir. BAP 2004); *In re Doherty*, 229 B.R. 461, 465–467 (Bankr.E.D.Wash. 1999); *In re Mishler, Jr.*, 223 B.R. 17, 20 (Bankr.M.D.Fla.1998); *In re Schlapper*, 195 B.R. 805, 806 (Bankr.M.D.Fla.1996). Further, this Court does not find persuasive the theory, that in order to harmonize sections 349(b)(3), 362(c)(2)(B) and 1326(a)(2) of the Code, the funds are returnable to debtors but subject to any statutory liens. *In re Clifford*, 182 B.R. 229, 231–233 (Bankr.N.D.Ill.1995).

█ The better view is expressed in other decisions that focus on the facts that the plain and unambiguous language of section 1326(a)(2) specifically governs the disposition of chapter 13 plan payments, and that it clearly provides that the funds, minus adequate protection payments and administrative claims, should be returned to debtors. *In re Davis*, 2004 WL 3310531 (Bankr.M.D.Ala.2004); *In re Oliver*, 222 B.R. 272, 274–275 (Bankr.E.D.Va.1998); *In re Walter*, 199 B.R. 390, 393 (Bankr. C.D.Ill.1996); *In re Bailey*, 330 B.R. 775, 776–777 (Bankr.D.Or.2005).

█ As expressed by the Court in *In re Davis*, the language of section 1326(a)(2) is clear and unambiguous. In such instances, courts are required to follow the principle of statutory construction that dictates adhering to the plain meaning of statutes unless doing so renders an outcome contrary to congressional intent. *In re Davis*, citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). As noted by the *In re Davis* court, returning the funds to debtors accomplishes three statutory purposes: (1) when plans fail allowing creditors to seize debtors' funds would be in conflict with the policy of encouraging chapter 13 filings; (2) return of the funds to debtors allows for the prompt closing of the estate by precluding conflicting efforts of creditors to gain access to funds held by chapter 13 trustees; and (3) returning funds to debtors fosters the concept of revesting upon dismissal by placing the funds in their hands thereby restoring all parties to their original positions.

In the instant case, as noted above, there are in excess of $100,000.00 in allowed claims. By returning the funds to the Debtor, the interests of all the creditors are preserved and are on equal footing. To do otherwise would provide the Creditor with preferred treatment contrary to the interests of other creditors that would also like payment. It would also penalize the Debtor for his effort to pay creditors through the chapter 13 process.

Accordingly, the Trustee's Motion for Authority to Disburse Funds is **GRANTED.**

It is further **ORDERED** that the Trustee forthwith disburse the sum of $5,995.00 to the Debtor free of any other interests.

**IT IS SO ORDERED.**